UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

REAL PROPERTY LOCATED AT 10295 COLLINS AVENUE,
UNIT 1616, BAL HARBOUR, FLORIDA 33154; and

REAL PROPERTY LOCATED AT 10295 COLLINS AVENUE,
UNIT 1617, BAL HARBOUR, FLORIDA 33154.

       Defendants *in rem*.
_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

PLAINTIFF, the United States of America, hereby files this civil complaint for forfeiture *in rem* and alleges as provided below. All dates, amounts, and locations described in this complaint are approximations.

## INTRODUCTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(a)(1)(A), and 985, the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure to forfeit real property located at 10295 Collins Avenue, Unit 1616, Bal Harbour, Florida 33154 ("Unit 1616") and at 10295 Collins Avenue, Unit 1617, Bal Harbour, Florida 33154 ("Unit 1617" and together with Unit 1616, the "Defendant Properties"). The Defendant Properties constitute or are derived from proceeds traceable to violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*, and are property involved in money laundering in violation

1

of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), and 1957. The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1345 and 1355.

2. The Court has *in rem* jurisdiction over the Defendant Properties pursuant to 28 U.S.C. § 1355.

3. Venue for this action is proper in the Southern District of Florida because acts or omissions giving rise to the forfeiture occurred in this District and because the Defendant Properties are in this District. *See* 28 U.S.C. §§ 1355(b)(1) and 1395.

## **RELEVANT STATUTES & EXECUTIVE ORDERS**

4. IEEPA conferred upon the President of the United States the authority to deal with unusual and extraordinary threats to the nation's national security and foreign policy. *See* 50 U.S.C. §§ 1701, 1702, and 1703. Under IEEPA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a).

5. In 2014, pursuant to his authorities under IEEPA, the President of the United States issued Executive Order ("E.O.") 13660, which declared a national emergency regarding the Crimea region of Ukraine. E.O. 13660 (Mar. 6, 2014), 79 Fed. Reg. 13493 (Mar. 10, 2014). The national emergency declared in E.O. 13660 regarding the situation in Ukraine has remained in continuous effect since 2014 and was most recently continued for another year commencing March 1, 2023. *See* Continuation of the National Emergency with Respect to Ukraine, 88 Fed. Reg. 13285 (Mar. 2, 2023). On multiple occasions, the President of the United States expanded the scope of the national emergency declared in E.O. 13660.

6. On December 19, 2014, using the powers conferred by, among other authorities, IEEPA and the National Emergencies Act, 50 U.S.C. § 1601, *et seq.*, the President of the United

States issued E.O. 13685, "Blocking Property of Certain Persons and Prohibiting Certain Transactions with Respect to the Crimea Region of Ukraine." E.O. 13685 § 2, 79 Fed. Reg. 77357 (Dec. 24, 2014). E.O. 13685 authorized the Department of the Treasury to designate persons and block their "property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person (including any foreign branch)." *Id.* Such blocked property "may not be transferred, paid, exported, withdrawn, or otherwise dealt in." *Id.* E.O. 13685 prohibited "[a]ny transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this [E.O.]" E.O. 13685 § 6(a). E.O. 13685 also prohibited "[a]ny conspiracy formed to violate any of the prohibitions set forth in this order." E.O. 13685 § 6(b). A violation of E.O. 13685 is an IEEPA violation. *See* 50 U.S.C. § 1705(a).

7. Executive Orders 13660, 13661, 13662, and 13685 are part of a set of regulations known as the "Ukraine-/Russia-Related Sanctions Regulations." 87 Fed. Reg. 26,094 (May 2, 2022), 31 C.F.R. Part 589. These regulations incorporate by reference the prohibited transactions set forth in the executive orders. 31 C.F.R. § 589.201. Under the regulations, the property and interests in property of an entity that is 50 percent or more owned, whether individually or in the aggregate, directly or indirectly, by one or more persons whose property and interests in property are blocked pursuant to any part of 31 C.F.R., Chapter V., are also blocked, regardless of whether the entity itself is listed. 31 C.F.R. § 589.411.

8. E.O. 13685 applied to persons who, according to the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), conducted activities that directly supported Russia's annexation of the Crimea region of Ukraine in 2014.

3

9. OFAC refers to persons or entities designated under these executive orders as specially designated nationals and blocked persons ("SDNs") and they are included in the SDN List. The SDN List is publicly available in the U.S. Department of the Treasury website. A person or entity may seek to obtain an OFAC license to transact with a person on the SDN List. A U.S. person transacting with an SDN without first obtaining a license from OFAC violated IEEPA.

## FACTUAL ALLEGATIONS

### I. Relevant Persons and Property

10. VAD, AO is a St. Petersburg, Russia-based construction company responsible for constructing the Tavrida Highway in the Russian-occupied Crimea region of Ukraine.

11. Russian national, Viktor Pavlovich Perevalov ("Perevalov"), was VAD, AO's co-founder and First Deputy General Director. In 2008, Perevalov and a family member, S.P., purchased the Defendant Properties.

12. Russian national, Valeri Vyacheslovovich Abramov ("Abramov"), was VAD, AO's co-founder and General Director. Abramov maintained bank accounts at a U.S. financial institution ("Bank-1") in the Southern District of Florida (the "Abramov Accounts").

13. 1616 Collins LLC is a Delaware company formed on April 10, 2018. 1616 Collins LLC became the title owner of the Defendant Properties commencing on June 14, 2018.

14. R.P., a U.S. citizen, is a family member of Perevalov. R.P. is listed as 1616 Collins LLC's sole beneficial owner.

15. R.S., a U.S. citizen, is a real estate agent and owner of a real estate business ("REB") in the Miami, Florida area. REB maintained business accounts at Bank-2 ("REB Accounts"), including an account ending in X2562 ("REB X2562") and an account ending in X2921 ("REB X2921"). R.S. also maintained a personal bank account at Bank-2 ending in X8895

("R.S. X8895"). R.S. served as the property manager of the Defendant Properties and retained a power of attorney to transact on behalf of Abramov and Perevalov. The Abramov Accounts' signature cards listed R.S. as Abramov's "care of party." R.S. is also a manager for 1616 Collins LLC.

16. R.S. and Perevalov used the services of a law firm operating in the Southern District of Florida ("Law Firm") to transact in the Defendant Properties.

### II. OFAC Sanctions

17. On January 26, 2018, pursuant to E.O. 13685, OFAC sanctioned Perevalov, Abramov, VAD, AO, and others following the Russian invasion of Crimea, a region of Ukraine (the "Sanctions"). OFAC added Perevalov, Abramov, and VAD, AO to the SDN List. Once OFAC imposed the Sanctions, all property or interest in property belonging to Perevalov, Abramov, and/or VAD, AO in the United States, including the Defendant Properties and the Abramov Accounts, "[was] blocked and [could] not be transferred, paid, exported, withdrawn, or otherwise dealt in[.]" E.O. 13685 § 2(a). At no time were the Defendant Properties, the Abramov Accounts, or any other property belonging to Perevalov and Abramov, exempted from the Sanctions. OFAC never issued a license for anyone to transact with, or on behalf of, Perevalov and Abramov.

18. The Sanctions were reported on numerous English and Russian-language websites in early 2018.

19. Notwithstanding the Sanctions, R.S. and Perevalov willfully engaged in prohibited transactions involving blocked property in the Southern District of Florida as set forth below.

### III. The Abramov Accounts and R.S.'s Knowledge of the Sanctions

20. On February 6, 2018, Bank-1 froze all funds in the Abramov Accounts in response to the Sanctions.

21. In March 2018, a Bank-1 employee contacted R.S. to confirm that Abramov was the same Abramov on the SDN List. R.S. confirmed this fact. The Bank-1 employee informed R.S. that "[Abramov] needs to apply for a License, directly to OFAC (Office of Foreign Assets Control, a U.S. government entity) to release the funds in the [Abramov Accounts]."

22. Thereafter, R.S. coordinated with another person ("Person-1") to seek OFAC's approval on Abramov's behalf to release the frozen funds in the Abramov Accounts. On March 19, 2018, Person-1 emailed R.S. the relevant sanction authority, E.O. 13685, to complete an OFAC application to unfreeze the Abramov Accounts. The email further informed R.S. that VAD, AO – the company Perevalov co-founded with Abramov – was sanctioned pursuant to E.O. 13685.

### IV. Transactions involving the Defendant Properties

23. Between September 30, 2014, and March 13, 2018, Perevalov was the authorized signatory on Bank-2 account ending in X8629 ("VP X8629"). Funds in this account were used to pay the Florida Power & Light ("FP&L") electric bills for the Defendant Properties.

24. On April 5, 2018, $550.05 from VP X8629 was transferred to R.S. X8895. This transaction independently violated the Sanctions. VP X8629 was closed by the end of April 2018.

25. On April 10, 2018, R.S. and others formed 1616 Collins LLC. R.P., a minor at the time, was the entity's purported sole beneficial owner. R.S. managed 1616 Collins LLC.

26. Law Firm formed the entity 1616 Collins LLC, including by preparing and filing with the State of Delaware 1616 Collins LLC's articles of incorporation.

27. On June 13, 2018, R.S. opened an account ending in X7108 at Bank-2 in the name of 1616 Collins LLC (the "1616 Account").

28. On June 14, 2018, the title of the Defendant Properties was transferred to 1616 Collins LLC in violation of the Sanctions. R.S. served as Perevalov's power of attorney for the transfer. Law Firm prepared the deed memorializing the transfer.

29. After June 14, 2018, the payments of the Defendant Properties' FP&L bills, and other maintenance payments, were paid from the 1616 Account. Despite the purported change in title ownership, the FP&L bills continued to be addressed to Perevalov until July 20, 2020, more than two years after the transfer to 1616 Collins LLC.

30. On October 22, 2018, Law Firm paid Miami-Dade County Clerk of Court a documentary stamp tax in the amount of $8,400 to record the transfer of the title of the Defendant Properties. The documentary stamp tax amount represents a 60-cent tax per $100 of the total consideration for a real estate transfer. Although Miami-Dade County property records show the transfer of the title of the Defendant Properties as a sale from Perevalov and S.P. to 1616 Collins LLC, neither Law Firm nor R.S. had any record of a sales agreement.

31. Prior to and after the Sanctions, R.S. leased the Defendant Properties to tenants for short-term rentals in U.S. dollars.

32. Based on WhatsApp text messages and FP&L records, Perevalov retained beneficial ownership of the Defendant Properties after the transfer to 1616 Collins LLC.

33. On June 21, 2021, in a conversation over WhatsApp, R.P. requested that R.S. "send the financial reports on my company 1616, 1617 for the last three years. As my parents said, I will be the one to handle it going forward." R.S. replied the same day, "I spoke with father [Perevalov]. I am aware."

34. On September 7, 2022, R.S. emailed Perevalov and R.P. a tax form for 1616 Collins LLC regarding the Defendant Properties.

35. 1616 Collins LLC continues to be the title owner of the Defendant Properties.

### V. Laundering of IEEPA Proceeds

36. As the property manager for the Defendant Properties and manager of 1616 Collins LLC, R.S. leased the Defendant Properties and collected rental proceeds on behalf of 1616 Collins LLC. The rental proceeds derived from the Defendant Properties were deposited into the REB Accounts. The REB Accounts were used by R.S. as part of his real estate and property management businesses. In addition to receiving rental proceeds for the Defendant Properties, the REB Accounts received deposits for other real estate services.

37. Between December 27, 2018, through February 22, 2023, a total of $288,060.00 in rental proceeds derived from the Defendant Properties was deposited into the 1616 Account from the REB Accounts. During this period, the balance of rental proceeds from the Defendant Properties in the REB Accounts never reached zero.

38. For example, between February 14, 2018, and November 2, 2018, REB X2562 received a total of $34,495.00 in rental proceeds derived from the Defendant Properties.

39. On December 27, 2018, a check drawn from REB X2562 in the amount of $39,500.00 was deposited into the 1616 Account. This deposit contained rental proceeds derived from the Defendant Properties.

40. From January 2, 2019, through March 14, 2023, a total of $275,950.70 was transferred from the 1616 Account to various entities for the continued ownership and maintenance of the Defendant Properties, including for real estate property taxes paid to the Miami-Dade

County Tax Collector, homeowners association fees, payments for special assessments to the Defendant Properties' homeowners association, and electric utility costs.

41. Specifically, on November 19, 2020, a wire transfer in the amount of $18,887.15 was made from the 1616 Account to the Miami-Dade County Tax Collector for a property tax payment for the Defendant Properties.

42. The rental proceeds were also used to promote the ongoing scheme to transact in the Defendant Properties and conceal the fact that Perevalov was the true beneficial owner of the Defendant Properties.

## BASIS FOR FORFEITURE

43. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' . . ., or a conspiracy to commit such offense" is subject to forfeiture to the United States. A "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7)(D) to include a violation of IEEPA.

44. Pursuant to 18 U.S.C. § 1956(a)(1)(A)(i), it is a federal crime to, "knowing that the property involved in a transaction represents the proceeds of some form of unlawful activity, conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity[.]"

45. Pursuant to 18 U.S.C. § 1957, it is a federal crime to "knowingly engage[]or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]"

46. Pursuant to 18 U.S.C. § 1956(h), it is a federal crime to conspire to commit any offense in violation of 18 U.S.C. §§ 1956 or 1957.

## FIRST CLAIM
### Proceeds of IEEPA Violations
### 18 U.S.C. § 981(a)(1)(C)

47. The factual allegations in paragraphs 1 to 46 are re-alleged and incorporated by reference herein.

48. The Defendant Properties constitute or were derived from proceeds traceable to IEEPA offenses in violation of 50 U.S.C. 1701, *et seq.*, or a conspiracy to commit such offenses.

49. Accordingly, the Defendant Properties are subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Property Involved in Money Laundering Conspiracy
### 18 U.S.C. § 981(a)(1)(A)

50. The factual allegations in paragraphs 1 to 46 are re-alleged and incorporated by reference herein.

51. As set forth above, the Defendant Properties were involved in transactions or attempted transactions in a conspiracy to commit an offense in violation of 18 U.S.C. §§ 1956 or 1957, and/or constitute property traceable to such property.

52. Accordingly, the Defendant Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM
### Property Involved in Promotion Money Laundering
### 18 U.S.C. § 981(a)(1)(A)

53. The factual allegations in paragraphs 1 to 46 are re-alleged and incorporated by reference herein.

54. As set forth above, the Defendant Properties were involved in transactions or attempted transactions with the intent to promote the carrying on of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or constitute property traceable to such property.

55. Accordingly, the Defendant Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FOURTH CLAIM
### Property Involved in Laundering Transactions Greater Than $10,000
### 18 U.S.C. § 981(a)(1)(A)

56. The factual allegations in paragraphs 1 to 46 are re-alleged and incorporated by reference herein.

57. As set forth above, the Defendant Properties were involved in transactions in property of a value greater than $10,000 that was derived from specified unlawful activity in violation of 18 U.S.C. § 1957, and/or constitutes property traceable to such property.

58. Accordingly, the Defendant Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

**WHEREFORE**, Plaintiff, the United States of America requests that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Properties; that the Defendant Properties be forfeited and condemned to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

| | |
|---|---|
| MARKENZY LAPOINTE<br>UNITED STATES ATTORNEY | MARGARET A. MOESER<br>ACTING CHIEF<br>MONEY LAUNDERING<br>AND ASSET RECOVERY SECTION<br>CRIMINAL DIVISION<br>U.S. DEPARTMENT OF JUSTICE |
| /s/ Marx P. Calderón<br>Marx P. Calderón<br>Eli S. Rubin<br>Assistant United States Attorneys<br>Court ID No. A5502700<br>Court ID No. A5502535<br>99 NE 4th Street, 4th Floor<br>Miami, FL 33132<br>(305) 961-9247<br>E-mail: Marx.Calderon@usdoj.gov<br>E-mail: Eli.Rubin@usdoj.gov | /s/ Sinan Kalayoglu<br>Sinan Kalayoglu<br>Lindsay Gorman<br>Trial Attorneys<br>Court ID No. A5503191<br>Court ID No. A5503193<br>1400 New York Avenue, N.W.<br>Washington, D.C. 20005<br>(202) 514-5900<br>E-mail: Sinan.Kalayoglu2@usdoj.gov<br>E-mail: Lindsay.Gorman@usdoj.gov |
| | JENNIFER KENNEDY GELLIE<br>ACTING CHIEF<br>COUNTERINTELLIGENCE AND<br>EXPORT CONTROL SECTION<br>NATIONAL SECURITY DIVISION<br>U.S. DEPARTMENT OF JUSTICE |
| | /s/ Joshua E. Kurland<br>Joshua E. Kurland<br>Trial Attorney<br>Court ID No. A5503192<br>950 Pennsylvania Avenue, N.W.<br>Suite 7700D<br>Washington, D.C. 20530<br>(202) 514-8285<br>E-mail: Joshua.Kurland@usdoj.gov |

## VERIFICATION

I declare under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigation ("FBI"). The foregoing factual allegations are true and correct to the best of my knowledge and belief. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as an FBI Special Agent.

Executed this 21 day of February, 2024.

JARED WESLEY, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION